UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CYNTHIA MARTINEZ,

        Plaintiff,

v.                              Case No. 8:17-cv-77-T-AEP

GULF COAST ORTHOPEDIC
CENTER CORPORATION
d/b/a THE BONATI INSTITUTE,

        Defendant.

_____/

## <u>ORDER</u>

Plaintiff Cynthia Martinez ("Martinez") brought this action asserting claims against Defendant Gulf Coast Orthopedic Center Corporation, doing business as The Bonati Institute ("The Bonati Institute"), for violations of the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act ("FCRA") (Doc. 1). Currently before the Court is The Bonati Institute's Renewed Dispositive Motion for Summary Judgment (Doc. 49), in which The Bonati Institute argues that summary judgment should be granted as Martinez failed to demonstrate that it discriminated against her based on her age.[1] Namely, The Bonati Institute argues that, under the burden-shifting analysis, Martinez failed to establish that The Bonati Institute's legitimate, nondiscriminatory reasons for her termination constituted pretext for age discrimination. Martinez responds in opposition, asserting that a reasonable juror could conclude that The Bonati Institute's purported nondiscriminatory reasons for her termination

---

[1] After the close of discovery, Plaintiff moved to reopen discovery for the limited purpose of deposing an employee of The Bonati Institute who filed a Charge of Discrimination (Doc. 41). Although The Bonati Institute initially opposed such request, the parties agreed during a hearing on the motion that limited discovery should proceed. As a result, the initial Motion for Summary Judgment was denied without prejudice (Docs. 25, 44). The Bonati Institute now renews its request for summary judgment on Martinez's claims (Doc. 49).

constituted pretext (Doc. 51). The Bonati Institute subsequently filed a reply brief, disputing Martinez's arguments and assertions (Doc. 54). For the following reasons, The Bonati Institute's Renewed Dispositive Motion for Summary Judgment (Doc. 49) is granted.

## I. Background

Martinez began working at The Bonati Institute on March 19, 1990, as an X-ray technician and continued to do so until October 23, 2015, with a minor break in employment for a few months in 2003 to 2004 (Doc. 26-1, Deposition of Cynthia Martinez ("Martinez Dep."), at 4-7, 27). At the time The Bonati Institute reinstated Martinez to her prior position after her break in employment, Martinez was 51 years old and received the same pay and benefits as she received prior to her break in employment (Martinez Dep., at 6-7; Doc. 26-23, January 17, 2018 Declaration of Rhonda Spinelli ("January 2018 Spinelli Decl."), at ¶3). Martinez then worked for The Bonati Institute continuously until her termination on October 23, 2015 (Martinez Dep., at 7).

During her employment, Martinez complained to other employees, including Dr. Robert Dunn ("Dr. Dunn") and Rhonda Spinelli ("Spinelli"), the director of Human Resources for The Bonati Institute, regarding her lack of a raise for several years despite the ability of The Bonati Institute to fund the purchase of a new MRI machine, and she subsequently approached Dr. Alfred Bonati ("Dr. Bonati") to request a raise, which Dr. Bonati denied (Martinez Dep., at 12-17; Doc. 26-8, Deposition of Rhonda Spinelli ("Spinelli Dep."), at 6, 36, 55-56; January 2018 Spinelli Decl., at ¶2; Doc. 26-15, Deposition of Marcelo Eguino ("Eguino Dep."), at 18; Doc. 26-20, Deposition of Oscar Aparicio ("Aparicio Dep."), at 10). When Martinez asked Spinelli why Dr. Bonati denied her request for a raise, Spinelli told Martinez that it was because Martinez left work early (Martinez Dep., at 17).

The Bonati Institute originally altered Martinez's work hours to allow her to care for her father up until his death in 2012, for which she received permission to arrive late to work (Martinez Dep., at 17-18, 22, 31 & Ex. 6; Spinelli Dep., at 23). Martinez continued to come in late after that time, however (Martinez Dep., at 32; Spinelli Dep., at 22-24). In fact, after the death of her father, Martinez admittedly continued to come in late, routinely stopped taking a lunch break, and failed to clock out for lunch (Martinez Dep., at 23-24, 44-46). Her time sheets reflect that she consistently was tardy, failed to clock in or out for lunch, and left early (January 2018 Spinelli Decl., Ex. A). This pattern of behavior continued up until her termination, including during The Bonati Institute's implementation of a new MRI machine.

Also during the implementation of the new MRI machine, Martinez repeatedly stated that she did not believe The Bonati Institute needed a new machine and additionally did not fully assist in preparing the site for the new machine, failed to show up on time for training, and failed to attend training as requested by Marcelo Eguino ("Eguino"), the vice president of digital marketing at The Bonati Institute and the individual in charge of the acquisition and implementation of the new MRI machine (Eguino Dep., at 11-17, 21-22; Doc. 26-15, Ex. 1, Declaration of Marcelo Eguino ("Eguino Decl."), at ¶¶2-6; Aparicio Dep., at 15-16; Doc. 26-21, Deposition of Luis Lizardo ("Lizardo Dep."), at 29-30; Doc. 54, Ex. 1, Declaration of Elaine Lois Sadeghi ("Sadeghi Decl."), at ¶7). Instead, Martinez attended intermittently and requested that Luis Lizardo ("Lizardo"), the MRI technician, attend the training sessions for the new MRI and train her when he finished (Martinez Dep., at 12, 22-23; Sadeghi Decl., at ¶7; Lizardo Dep., at 23, 29). At the same time, Martinez informed Eguino that she would train when she could between patients (Martinez Dep., at 11, 33-37). Attending training between patients was not what Eguino directed, however (Martinez Dep., at 9-12, 23, 33-37; Eguino Dep., at 11-19; Lizardo Dep., at 29). Given Martinez's failure to train on the new machine as directed and her

complaints regarding the acquisition of the machine, Eguino reported Martinez's behavior to Dr. Bonati and Spinelli (Eguino Dep., at 11-23).

During the course of Martinez's employment, Spinelli insists that she spoke to Martinez about her lack of work discipline at least five times and spoke to Martinez about her work hours a minimum of five times, although Spinelli did not document those discussions (Spinelli Dep., at 34). Spinelli also indicated that she spoke to Martinez several times prior to termination about her refusal to clock out for lunch (Spinelli Dep., at 49). Elaine Sadeghi, who became the clinic manager in May 2015 and began supervising the radiology department in June 2015, additionally spoke to Martinez about her habits of ignoring assigned work hours, arriving to work late, leaving early, and not clocking out for lunch (Sadeghi Decl., at ¶¶3-5).

According to Spinelli, all of Martinez's violations, either standing alone or in combination, could be characterized as misconduct in the workplace providing sufficient cause for termination (Spinelli Dep., at 55-56). To that end, in determining whether to discipline or terminate an employee, The Bonati Institute implemented a discretionary progressive disciplinary policy, including the following steps: (1) corrective counseling/verbal warning; (2) formal reprimand/written warning; (3) final warning/suspension; and (4) termination (Martinez Dep., Ex. 5, at 21; Spinelli Dep., at 8, 68-69 & Ex. 6, at 21). In pertinent part, the Employee Handbook describes the progressive discipline policy as follows: "The Institute may utilize a system of progressive discipline at its sole discretion in cases of misconduct or unacceptable performance. … Disciplinary action may begin at an advanced stage of the process or may result in immediate termination based upon the nature and severity of the offense, the employee[']s past record with the Institute and any other relevant circumstances" (Martinez Dep., Ex. 5, at 21). The Employee Handbook therefore indicates that the progressive

disciplinary policy is optional, and disciplinary action can start at any step, including termination, without necessarily going through each of the prior steps.

In this instance, the decision to terminate Martinez came after discussions occurred among and between Dr. Bonati, Spinelli, Sadeghi, and Eguino. Prior to terminating Martinez, Dr. Bonati spoke to Eguino regarding Martinez's failure to properly train on the new machine (Bonati Dep., at 9-12, 14-15, 18-19; Eguino Dep., at 17-22). Approximately the same week that Martinez was terminated, Spinelli discussed Martinez's employment issues with Dr. Bonati, which she had also discussed with Sadeghi and Eguino, including Martinez's refusal to train on the new machine, slacking off on job duties, tardiness, attendance issues, lack of cleanliness, and disregard for orders from Eguino, as the project supervisor for the new machine (Spinelli Dep., at 28-30, 45; Eguino Dep., at 17-22). According to Spinelli, Dr. Bonati indicated that he already knew of the attendance issues, as he saw Martinez leaving early frequently (Spinelli Dep., at 28). After discussing the employment issues with Dr. Bonati, Spinelli asked Dr. Bonati what he wanted her to do, and Dr. Bonati directed her to terminate Martinez (Spinelli Dep., at 29). In that regard, Dr. Bonati made the decision to terminate Martinez's employment with The Bonati Institute, based upon information provided to him from Spinelli and Eguino (Spinelli Dep., at 25, 28-30, 69-70; Bonati Dep., at 7-8, 9-12, 14-15, 18-19; Eguino Dep., at 20-24).

After speaking with Dr. Bonati about terminating Martinez, Spinelli met with Martinez and Sadeghi to inform Martinez of the termination of her employment with The Bonati Institute (Spinelli Dep., at 25). During the meeting, Spinelli explained to Martinez that she was being terminated because "she just was not doing the job that [was] expected of her and that she was to do; she only did what she had to do, what she could get away with, and it wasn't enough anymore" (Spinelli Dep., at 26). Spinelli also told Martinez that she did not seem as enthusiastic

about the job as she used to be and was not doing everything that needed to be done (Spinelli Dep., at 31-32). Martinez indicated that she was told that her purported "lack of enthusiasm" formed the basis for her termination (Martinez Dep., at 7-8, 38).

Following Martinez's termination, The Bonati Institute replaced Martinez with Christine Kallas ("Kallas"), who assumed Martinez's job duties and responsibilities (Spinelli Dep., at 56 & Ex. 2). At the time that Kallas replaced Martinez, Kallas was over the age of 40 but younger than Martinez (Spinelli Dep., at Ex. 2, at 5). The other individuals who followed in the position after Kallas were also over the age of 40 (Spinelli Dep., at 57).

Prior to her termination, Martinez understood that she could be fired at any time and for no reason at all (Martinez Dep., at 39, 46-47). As the Employee Handbook indicates, since employment at The Bonati Institute "is based on mutual consent, either the employee or the institution is privileged to terminate employment without notice or requirement of cause" (Martinez Dep., Ex. 5, at 26). Notwithstanding, though Martinez admits she has no idea why she was fired and only assumes her termination was because of her age, Martinez believes that her age provided the basis for her termination because The Bonati Institute replaced her with a younger employee, because she lacked enthusiasm, and because The Bonati Institute believed she did not want to learn how to use the new MRI (Martinez Dep., at 29-30, 47-49). As a result, Martinez initiated this action asserting claims for age discrimination under both the ADEA and the FCRA (Doc. 1).

By the instant motion (Doc. 49), The Bonati Institute renews its request for summary judgment on Martinez's claims, arguing that, although Martinez can establish a *prima facie* case for discrimination, it established legitimate, non-discriminatory reasons for terminating Martinez's employment, including insubordination to a senior manager regarding the implementation of the new MRI, refusal to train on the MRI, failure to follow her assigned

schedule, refusal to clock out during lunch, sleeping while at work, and her allegedly rude, disrespectful behavior toward other employees of The Bonati Institute. Additionally, the Bonati Institute argues that Martinez fails to demonstrate that any of its proffered reasons for termination constitute pretext. In response (Doc. 51), Martinez essentially contends that summary judgment should not be granted because The Bonati Institute's reasons for termination constituted pretext for age discrimination. Namely, Martinez argues that (1) The Bonati Institute failed to clearly and consistently articulate the reasons for her termination; (2) The Bonati Institute failed to follow its progressive disciplinary policy; (3) Dr. Bonati made age-based comments to Martinez's coworker that demonstrate discriminatory animus; (4) the statements by Spinelli regarding Martinez's lack of enthusiasm and failure to embrace new technology are natural correlations to age and fundamentally lie at the core of age discrimination; and (5) Dr. Bonati was a conduit or "cat's paw" for Spinelli's age-based discriminatory animus toward Martinez.

## II.     Standard of Review

Summary judgment is appropriate where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of some factual disputes between the parties will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). The substantive law applicable to the claims will identify which facts are material. *Id.* at 248. In reviewing the motion, courts must view the evidence

and make all factual inferences in a light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 483 F.3d 1265, 1268 (11th Cir. 2007) (citation omitted).

### III.    Discussion

#### A.    *McDonnell Douglas* Framework

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"   29 U.S.C. § 623(a)(1).[2]   Essentially, the ADEA prohibits employers from discriminating against an employee who is at least 40 years of age on the basis of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a).  An aggrieved employee may establish a claim of unlawful discrimination under the ADEA through either direct or circumstantial evidence. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).   Martinez admittedly denies any direct evidence of discrimination regarding her termination, such as a statement from anyone at The Bonati Institute indicating that she was fired because she was too old (Martinez Dep., at 8).   Indeed, when asked regarding the basis for her belief that she was terminated due to age, Martinez pointed only to the comment from Spinelli at the time of Martinez's termination regarding Martinez's lack of enthusiasm, the fact that The Bonati Institute hired someone younger than her, and possibly the fact that, as she interpreted the situation, she did not get a chance to learn new technology (Martinez Dep., at 8, 47).  As noted,

---

[2]  Martinez also brings an age-discrimination claim pursuant to the FCRA.  Given that claims initiated under the FCRA apply the same framework used in ADEA age-discrimination cases, the Court will focus the analysis upon cases considering claims brought under the ADEA. *See Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 n.2 (11th Cir. 1997) (citation omitted).

she admits that, other than her speculation, she has no idea why she was fired and only assumed her termination was because of her age (Martinez Dep., at 29-30). Notably, however, Martinez denies ever hearing any comments regarding her age or inability to work due to her age (Martinez Dep., at 8).

Accordingly, where the record fails to reflect any direct evidence of discrimination, as in the instant case, the claims are governed by the familiar burden-shifting scheme set forth under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973). *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*). Initially, the plaintiff must establish a *prima facie* case of age discrimination, which creates a presumption that the employer unlawfully discriminated against the employee. *Kragor*, 702 F.3d at 1308. To establish a *prima facie* case for an ADEA discrimination claim, a plaintiff must demonstrate that (1) she was a member of the protected age group, (2) she was subjected to adverse employment action, (3) she was replaced by or otherwise lost a position to a younger individual; and (4) she was qualified to do the job. *Id.*; *Chapman*, 229 F.3d at 1024. Once a plaintiff demonstrates these elements, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Wilson v. B/E Aerorspace, Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004); *Chapman*, 229 F.3d at 1024. The defendant need not demonstrate that the proffered reasons actually motivated the adverse employment action, but, instead, must produce evidence that raises a genuine issue of material fact as to whether it discriminated against the plaintiff. *Chapman*, 229 F.3d at 1024.

If the defendant can articulate one or more legitimate, nondiscriminatory reasons, the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason constitutes pretext for illegal discrimination. *Wilson,* 376 F.3d at 1087; *Chapman*, 229 F.3d at 1024. At that point, the plaintiff must come forward with

evidence sufficient to permit a reasonable factfinder to conclude that the reasons proffered by the defendant were not the actual reasons for the adverse employment decision. *Chapman*, 229 F.3d at 1024-25. In establishing pretext, the plaintiff must show both that the reason was false and that the discrimination was the real reason for the adverse employment action. *See Brooks v. City Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (citation omitted). Notably, the fact that the employer's proffered reason was mistaken does not establish pretext; instead, the plaintiff must demonstrate that the challenged employment action was motivated by discriminatory animus. *See Wilson*, 376 F.3d at 1092. To establish pretext, therefore, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation and citations omitted). Further, in attempting to show pretext, the plaintiff must meet the employer's reason "head on and rebut it" rather than simply recasting the employer's reason, substituting his or her business judgment for that of the employer, or otherwise quarreling with the wisdom of the decision. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265-66 (11th Cir. 2010). If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the defendant is entitled to summary judgment on the plaintiff's claim. *Chapman*, 229 F.3d at 1024-25.

### i.     Legitimate Nondiscriminatory Reasons

The Bonati Institute does not dispute that Martinez can demonstrate a *prima facie* case of age discrimination (Doc. 49, at 21).[3] Accordingly, the burden shifts to The Bonati Institute

---

[3] Indeed, Martinez demonstrated that she was over 40 years of age, The Bonati Institute subjected her to an adverse employment action in the form of termination, The Bonati

to produce legitimate, nondiscriminatory reasons for Martinez's termination. The Bonati Institute need not persuade the Court that the proffered reasons actually motivated the decision to terminate Martinez, however. *Combs*, 106 F.3d at 1528. Rather, The Bonati Institute must only produce admissible evidence which would permit the trier of fact rationally to conclude that the termination decision was not motivated by discriminatory animus. *Combs*, 106 F.3d at 1528.

As The Bonati Institute notes, an "'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Alexander v. Sonny's Real Pit Bar-B-Q*, 701 F. App'x 931, 935 (11th Cir. 2017) (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). To that end, The Bonati Institute offers several legitimate, nondiscriminatory reasons for Martinez's termination. Namely, The Bonati Institute contends that it fired Martinez due to her insubordination to a senior manager regarding the implementation of the new MRI, refusal to train on the MRI, failure to follow her assigned schedule, refusal to clock out during lunch, sleeping while at work, and her allegedly rude, disrespectful behavior toward other employees of The Bonati Institute (*see* Spinelli Dep., at 17-19, 22-24, 37-39, 51-54, and Ex. 2-3; Doc. 31, Ex. 1; Martinez Dep. At 12, 22-23, 32-37, 39-41, 42-46; Bonati Dep. At 6-15; Aparicio Dep., at 6-10; Eguino Dep., at 12-14, 16-19, 21; Lizardo Dep., at 21; March 2016 Spinelli Decl., at ¶¶5-20; January 2018 Spinelli Decl., Ex. A; Sadeghi Decl., at ¶¶4-8). Given the legitimate, nondiscriminatory reasons provided, The Bonati Institute met its burden. The burden then shifts to Martinez to demonstrate that such reasons constitute pretext.

---

Institute replaced her with a younger technician, and she was qualified to perform the work of a radiology technician.

### ii.    Pretext

Martinez argues that each of The Bonati Institute's proffered reasons constitute pretext for age discrimination.   Where, as here, "the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citing *Chapman*, 229 F.3d at 1037).   Accordingly, Martinez must rebut each of the legitimate, nondiscriminatory reasons proffered by The Bonati Institute.   In doing so, Martinez argues that (1) The Bonati Institute failed to clearly and consistently articulate the reasons for her termination; (2) The Bonati Institute failed to follow its progressive disciplinary policy; (3) Dr. Bonati made age-based comments to Martinez's coworker; (4) the statements by Spinelli regarding Martinez's lack of enthusiasm and failure to embrace new technology are natural correlations to age and fundamentally lie at the core of age discrimination; and (5) Dr. Bonati was a conduit or "cat's paw" for Spinelli's age-based discriminatory animus toward Martinez.

Upon consideration, the Court finds that Martinez failed to establish pretext or, more importantly, to demonstrate that a genuine issue of material fact exists as to whether The Bonati Institute discharged her for legitimate, non-discriminatory reasons.   Even when viewing the facts in the light most favorable to Martinez, the record does not reflect that The Bonati Institute's reasons for termination constituted pretext for age discrimination.

### a.    Failure to Articulate Consistent Reasons

Martinez first argues that The Bonati Institute failed to clearly and consistently articulate the reasons for her termination.   As Martinez contends, "an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext."   *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006); *see Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) (noting that the

identification of inconsistencies in an employer's testimony can provide evidence of pretext). "Nevertheless, the fact that the employer offers an additional reason for the employment decision does not suggest pretext if both of the employer's reasons are consistent." *Ritchie v. Industrial Steel, Inc.*, 426 F. App'x 867, 872 (11th Cir. 2011) (citing *Tidwell*, 135 F.3d at 1428).

Martinez contends that the only reason provided to her by Spinelli at the time of her termination in October 2015 was that Martinez "didn't have as much enthusiasm as [she] used to" (Martinez Dep., at 7). According to Spinelli, at the time of Martinez's termination, Spinelli told Martinez that she did not seem as enthusiastic about the job as she used to be and was not doing everything that needed to be done (Spinelli Dep., at 31-32). At that time, Spinelli also told Martinez that The Bonati Institute terminated Martinez because "she just was not doing the job that [was] expected of her and that she was to do; she only did what she had to do, what she could get away with, and it wasn't enough anymore" (Spinelli Dep., at 26). Less than a week later, in response to a question regarding whether Martinez refused an offer of work on Martinez's unemployment paperwork, Spinelli indicated that Martinez's attitude and willingness to assist within her department had steadily declined and that her resistance to train on new equipment became a hindrance to the department (Spinelli Dep., Ex. 3, at 3). Following that, in a March 2016 declaration, Spinelli described Martinez's attendance and tardiness issues, lack of support for the new MRI purchased by The Bonati Institute, failure to properly train on the new MRI, and failure to follow instructions (Spinelli Dep., Ex. 1, March 21, 2016 Declaration of Rhonda Spinelli ("March 2016 Spinelli Decl.")). In that declaration, Spinelli stated that Martinez was not terminated because of her age but rather "for failing to perform her assigned work duties and insubordination" (March 2016 Spinelli Decl., at ¶10). A week later, The Bonati Institute provided the Equal Employment Opportunity Commission with the reasons for Martinez's termination and indicated that it terminated Martinez for failing to perform her

assigned work duties, failing to follow her scheduled work hours, and insubordination (Doc. 31, Ex. 1). Then, in September 2017, in response to Plaintiff's First Set of Interrogatories asking for "each and every reason" for Martinez's termination, Spinelli indicated the following: (1) refused to follow instructions given by Eguino; (2) refused to follow her regularly scheduled hours; (3) refused to clock out for lunch; (4) refused to train on the new MRI; (5) rude and threatening to other employees; and (6) slept on the job (Spinelli Dep., Ex. 2, at 3).

Though Martinez argues that the reasons provided by The Bonati Institute somehow present conflicting narratives, the reasons provided all remain consistent. All the reasons provided from the time of Martinez's termination through the pendency of this action indicate that Martinez no longer performed her work in a manner acceptable to The Bonati Institute. Nothing in the statements by The Bonati Institute throughout the entire process conflicts with the original statements regarding Martinez's lack of enthusiasm for the position or the failure to perform her work as expected. At most, the subsequent statements indicating the bases for Martinez's termination merely provide specific examples of the ways in which Martinez failed to perform her work as expected rather than the original generalized statement that she lacked enthusiasm for her position and failed to perform her work as expected. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1377 (11th Cir. 1996) (agreeing with the district court that the reasons offered for termination were consistent and later statements regarding the reasons for termination simply offered more details justifying the termination).

Beyond that, and as explained more fully below, Martinez admitted that she committed several infractions, each of which she conceded provided cause to terminate her employment with The Bonati Institute (Martinez Dep., at 23, 39-46). Given Martinez's admission of committing the very infractions The Bonati Institute cites to as the bases for her termination – infractions which The Bonati Institute referenced early and often throughout the time period

from Martinez's termination through the litigation of this action – Martinez fails to demonstrate that The Bonati Institute's purported failure to articulate consistent reasons for her termination demonstrated pretext. *See Cabrera v. Town of Lady Lake, Fla.*, Case No. 5:10-cv-415-Oc-34PRL, 2013 WL 12092573, at *21 (M.D. Fla. Mar. 2013) (finding that a plaintiff failed to establish pretext where the plaintiff admitted to the behavior which the employer classified as misconduct prohibited by its policies). Instead, The Bonati Institute clearly, consistently, and repeatedly articulated the reasons for Martinez's termination, and Martinez cannot establish pretext or a genuine issue of material fact on the lack of consistency of reasons provided for termination.

### b.      Disciplinary Policy

Martinez next contends that The Bonati Institute's failure to follow its progressive disciplinary policy suggests pretext. As Martinez contends, "an employer's deviation from its own standard procedures may serve as evidence of pretext." *Hurlbert*, 439 F.3d at 1299 (citations omitted); *see Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination.") (citation omitted). When an employer establishes a progressive disciplinary policy, a plaintiff may establish pretext by demonstrating that the employer did not follow the policy in his or her case, but, if management maintains discretion regarding whether to follow the disciplinary policy, a failure to follow such policy does not demonstrate pretext. *Rtichie*, 426 F. App'x at 873 (citations omitted); *see Rodriguez v. Cargo Airport Servs. USA, LLC*, Case No. 14-CV-22610-WILLIAMS, 2015 WL 13016400, at *9 (S.D. Fla. Aug. 5, 2015) ("In addition, while deviance from a progressive discipline policy can be evidence of pretext, it does not establish pretext where, as here, the company expressly retains the discretion to fire an employee for violating company policy immediately.") (citations omitted); *seer Vertrees v. Am. Vulkan Corp.*, No. 8:10-cv-2164-T-

24EAJ, 2012 WL 95306, at *8 (M.D. Fla. Jan 12, 2012) ("Since the disciplinary policy afforded discretion as to whether the steps could be skipped, the failure to adhere to the steps is not evidence of pretext.") (citation omitted).

With respect to the disciplinary policy, The Bonati Institute's Employee Handbook explicitly indicates:

> The Institute *may utilize a system of progressive discipline at its sole discretion* in cases of misconduct or unacceptable performance. The progressive discipline process may include *some or all* of the following stages:
>
> - **Corrective Counseling/Verbal Warning**
>   A verbal warning from department manager/supervisor and counseling needed for necessary corrective action.
>
> - **Formal Reprimand/Written Warning**
>   A formal written notice to the employee to be placed in the employee[']s personnel file citing a violation of rules or unsatisfactory performance and expected future conduct or performance.
>
> - **Final Warning/Suspension**
>   Employees may be suspended from duty/work by their supervisor or department head in consultation with the Administration from one to five days. Disciplinary suspension may be without pay.
>
> - **Termination**
>   A termination of employment which is initiated by the Institute.
>
> *Disciplinary action may begin at an advanced stage of the process or may result in immediate termination* based upon the nature and severity of the offense, the employee[']s past record with the Institute and any other relevant circumstances.

(Martinez Dep., Ex. 5, at 21) (emphasis added). By its very terms, the progressive disciplinary policy is optional and falls within the sole discretion of the Bonati Institute whether, depending on the circumstances, to implement one or all of the steps of disciplinary action or to proceed with immediate termination (Martinez Dep., Ex. 5, at 21; Spinelli Dep., at 8-13). The fact that The Bonati Institute chose to exercise its discretion in omitting stages of the progressive disciplinary policy when terminating Martinez thus does not establish pretext. Moreover, as noted, the Employee Handbook indicated that employment at The Bonati Institute was based

on mutual consent such that "either the employee or the institution is privileged to terminate employment without notice or requirement of cause" (Martinez Dep., Ex. 5, at 26).  The Bonati Institute thus did not need to provide any notice to Martinez when terminating her, much less adhere to multiple steps in an optional progressive disciplinary policy.

Regardless, as noted, Martinez admitted that she committed several infractions, each of which she acknowledged provided The Bonati Institute cause to terminate her employment (Martinez Dep., at 23, 39-46).  Specifically, the Employee Handbook provides, in relevant part:

**Work Schedules**

Employees are to be at their work stations at the scheduled times or as assigned by their supervisor.  Standard hours of operation are Monday – Friday 8am to 5pm, allowing 1 hour for lunch each day.  Lunches are to be taken from 12 to 1pm or 1 to 2pm.  Everyone must be back on the job by 2 pm; NO EXCEPTIONS!

\*\*\*

**Rules of Conduct**

All employees are expected to act responsibly and abide by all applicable laws, regulations, policies, procedures and instructions of the Institute and supervisory personnel.  The Institute has determined that the following activities (although not all inclusive) are by their very nature so harmful to the successful operation of any business that involvement *may be grounds for immediate termination or other disciplinary action*.

- Failure to report for schedule[d] work without notifying the supervisor in a timely manner or without satisfactory reason.
- Excessive tardiness or absence regardless of the reason.

   \*\*\*

- Insubordination or refusal of any employee to follow instruction or to perform assigned work.

   \*\*\*

- Physical or verbal abuse of fellow employees, visitors or patients/clients

   \*\*\*

- Failure to observe agreed upon working hours and schedules.

\*\*\*

**Absenteeism**

Employees must be present and on time for work as scheduled. Absence and tardiness seriously impair [The Bonati Institute's] services. Excessive absenteeism or tardiness, regardless of the reason, *may result in dismissal*.

\*\*\*

Failure to report for scheduled work without notifying the supervisor or without satisfactory reason in a timely manner *may result in termination*.

(Martinez Dep., Ex. 5, at 18, 20, 23) (emphasis added). According to Spinelli, a violation of any of those provisions could establish grounds for immediate termination (Spinelli Dep., at 68). Martinez admitted to violating the policies regarding taking the required lunch hour and excessive tardiness or absences (Martinez Dep., at 39-41, 45-46 & Ex. 5). Spinelli talked to Martinez about her tardiness, which The Bonati Institute permitted for the period while Martinez's father was ill but which did not continue for the period after his death, and Martinez even received a performance review in 2011 documenting Martinez's knowledge of her tardiness and attendance issues (Martinez Dep., at 44; Spinelli Dep., at 22-23; January 2018 Spinelli Decl., Ex. D). Sadeghi indicated that she also noticed Martinez consistently ignoring assigned work hours, arriving to work late, leaving early, and not clocking out for lunch and spoke to Martinez about such issues (Sadeghi Decl., at ¶¶4-5). Despite awareness of her attendance issues, Martinez consistently reported to work late and left work early until her termination in October 2015 (January 2018 Spinelli Decl., Ex. A; Sadeghi Decl., at ¶5). Further, according to Martinez, she made comments to fellow employees on two separate occasions, which those employees found upsetting or offensive and later reported to Spinelli and which, at least as to one of the employees who made a report, Spinelli discussed with Martinez

(Martinez Dep., at 42-44). Additionally, according to Spinelli, Martinez also failed to properly perform her duties of archiving films and keeping the radiology department neat and in order, and Martinez received a verbal warning regarding these issues (Spinelli Dep., at 17-19, 37-39).

Accordingly, The Bonati Institute provided Martinez with several verbal warnings or corrective counseling sessions regarding the various issues The Bonati Institute cites as the bases for its termination decision. Although The Bonati Institute failed to otherwise adhere to its optional progressive disciplinary policy, the implementation of such policy fell within the sole discretion of The Bonati Institute. Since the disciplinary policy afforded discretion as to whether The Bonati Institute could skip steps in the disciplinary process, the failure to adhere to those steps does not establish evidence of pretext.

### c.    Dr. Bonati's Statements

Martinez next argues that statements made by Dr. Bonati about another employee after Martinez's termination, and not related to Martinez's termination, likewise establish pretext. Such "me too" evidence is indeed admissible to prove intent to discriminate. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1309 (11th Cir. 2016) (citations omitted). Notably, potentially discriminatory comments, whether isolated or not directly related to an employment decision, do not constitute direct evidence of discrimination but may contribute to a circumstantial showing of discriminatory intent. *Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002); *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729-30 (11th Cir. 1999) (finding that, although a potentially discriminatory comment by a decisionmaker does not rise to the level of direct evidence of discrimination, and would not be enough standing alone to show a discriminatory motive, a jury could infer from it some age bias on behalf of the decisionmaker's part when that comment is coupled with other evidence in the case demonstrating

discriminatory intent or motive).  In this case, however, Dr. Bonati's comments do not establish pretext.

Namely, The Bonati Institute terminated Martinez's employment on October 23, 2015 (Martinez Dep., at 7).  At some point in 2017, well after Martinez's termination, Dr. Bonati made age-related comments regarding Helaine Colosimo ("Colosimo"), an employee of The Bonati Institute (Doc. 50, Ex. 1, Deposition of Helaine Colosimo ("Colosimo Dep."), at 9, 13-17).  According to Colosimo, Dr. Bonati stated that Colosimo was "old and needed to retire" (Colosimo Dep., at 13-15 & Ex. 1).  Although made by Dr. Bonati, the decisionmaker regarding Martinez's termination, the remarks regarding Colosimo's age did not bear upon the decision to terminate Martinez one to two years *before* Dr. Bonati made such comments.  Martinez fails to demonstrate how Dr. Bonati's stray remarks regarding another employee, made one to two years after Martinez's termination, and therefore completely unrelated to Martinez's termination, establish pretext.  *See Ritchie*, 426 F. App'x at 874 (finding that statements made on one or two occasions by decisionmakers to the plaintiff regarding his age did not create a genuine issues of fact as to whether age was the real reason for his termination where the plaintiff did not link those statements to the termination decision); *Rojas*, 285 F.3d at 1342-43 (finding that an isolated discriminatory comment unrelated to the adverse employment decision, taken alone, was insufficient to establish a material fact on pretext where no additional evidence supported a finding of pretext); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 287 (6th Cir. 2012) (stating that age-related discriminatory remarks unrelated to the adverse employment decision did not constitute evidence of discrimination and therefore did not establish pretext); *see also Stover v. Martinez*, 382 F.3d 1064, 1077-78 (10th Cir. 2004) (concluding that isolated remarks, unrelated to a disputed employment action, are insufficient to demonstrate discriminatory animus and that a plaintiff must instead show a nexus between the alleged

discriminatory comments and the disputed employment action); *see also Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69-70 (1st Cir. 2002) (stating that stray workplace remarks, as well as statements made either by a nondecisionmakers or by decisionmakers not involved in the decisional process, normally are not sufficient, standing alone, to establish pretext); *see also Mells v. Shinseki*, No. 8:13-cv-3214-T-30TGW, 2015 WL 4716212, at *6 (M.D. Fla. Aug. 7, 2015) (finding that evidence of a decisionmaker's discriminatory remarks are probative only if they illustrate the decisionmaker's state of mind at the time of the adverse employment action and that stray remarks that are isolated and unrelated to the adverse employment action are insufficient in that regard). Rather, given the timing and lack of any connection between Dr. Bonati's statements and the decision to terminate Martinez, the statements from Dr. Bonati do nothing to further Martinez's efforts to establish pretext or to create a genuine issue of material fact as to whether age was the determinative factor in the decision to terminate Martinez.

### d. Spinelli's Statements

Martinez also asserts that Spinelli's statements regarding Martinez's loss of enthusiasm and failure to train on new technology constitute pretext for discrimination. According to Martinez, euphemisms regarding declining enthusiasm, less energy, and failure to embrace new technology naturally correlate to age and therefore often lie at the heart of age discrimination. Contrary to Martinez's assertion, however, the statements by Spinelli, especially against this backdrop, do not convey discriminatory animus nor create a genuine issue of material fact as to whether the proffered legitimate, nondiscriminatory reasons provided by The Bonati Institute constituted pretext.

As Martinez notes, the concern that employers deprive older workers of employment based on inaccurate and stigmatizing stereotypes prompted Congress to promulgate the ADEA. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). The ADEA thus requires employers to

evaluate older employees on their merits rather than their age and prohibits employers from relying on age as a proxy for an employee's remaining characteristics, such as productivity. *Id.* at 611. Notably, though, when an employer's decision is entirely motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears, even where the motivating factor correlates with age. *Id.*

Here, even construing the facts in the light most favorable to Martinez, Spinelli's statements regarding Martinez's lack of enthusiasm and failure to learn new technology do not mask any stigmatizing stereotype or discriminatory animus. Martinez in fact conceded that a lack of enthusiasm and a refusal to train on a new machine were not issues necessarily limited to older individuals (Martinez Dep., at 48-49). *See, generally, Chapman*, 229 F.3d at 1036 ("Because there is a stereotype that older people are not as aggressive as younger people, they would have us treat use of aggressiveness as a hiring criteria as equivalent to age bias, or at the least as highly suspicious. We decline to do so. … Just because a sought after trait is linked by stereotype to an impermissible consideration does not mean an employer cannot search for and consider the trait itself independently from the stereotype."). As to the lack of enthusiasm, the record reflects that (1) Martinez repeatedly complained to several employees of The Bonati Institute about not receiving a raise despite the acquisition of an expensive new MRI machine by The Bonati Institute (Martinez Dep., at 12-17; Spinelli Dep., at 36; Eguino Dep., at 18, 21-22; Aparicio Dep., at 10; March 2016 Spinelli Decl., at ¶¶5-6); (2) Martinez slept on the job (Aparicio Dep., at 6-10; Lizardo Dep., at 21; Spinelli Dep., at 51-54); (3) Martinez failed to clean up her workspace when directed to do so (Eguino Dep., at 12-14, 16-17; Spinelli Dep., at 37-38); and (4) Martinez routinely failed to adhere to policies regarding tardiness, attendance, and lunch breaks (Martinez Dep., at 32, 39-41, 45-46, & Ex. 5; Spinelli Dep., at 22-24; January 2018 Spinelli Decl., Ex. A). Though a "lack of enthusiasm" might operate as a euphemism for

age discrimination in certain instances, the facts of this case do not warrant the conclusion that Spinelli's comment regarding Martinez's lack of enthusiasm masked any discriminatory animus based on age. Rather, given Martinez's actions and inaction, the statement merely reflects that, as Spinelli informed her, Martinez no longer put forth the effort required or performed at the level needed to maintain her employment with The Bonati Institute. Nothing in the record indicates that The Bonati Institute viewed Martinez's lack of enthusiasm or effort as a result of her age or terminated her based on such view.

Further, with respect to the failure to learn new technology, Martinez in fact admitted that she did not train on the new machine as Eguino directed, and everyone involved with the training and implementation agreed (Bonati Dep., at 6-15; Eguino Dep., at 11-19; Lizardo Dep., at 29; Martinez Dep., at 12, 22-23, 33-37). Martinez believed she needed to see patients rather than attend the entirety of the training on the new machine, but such belief went against Eguino's directive (Martinez Dep., at 9-12, 23, 34-37; Eguino Dep., at 11-19; Lizardo Dep., at 29). Eguino, and, more importantly, Dr. Bonati did not agree with Martinez's decision to forego full participation in the training on the new machine, and Dr. Bonati then determined that her failure to properly train on the new machine constituted cause for termination. Nothing about that determination demonstrates a discriminatory animus based on age or otherwise indicates pretext.[4]

---

[4] The failure to properly train seems especially troubling considering that The Bonati Institute's radiology department only employed two technicians who could perform X-rays and MRIs (Lizardo Dep., at 6-7). Although Martinez was the X-ray technician, she also could perform MRIs (Martinez Dep., at 27). The ability to operate the new machine, which The Bonati Institute spent a significant amount of money to purchase (Eguino Decl., at ¶3), thus appears to have been integral to Martinez's ability to perform her job as a technician in the radiology department.

In addition, though not determinative, it is noteworthy that, at the time of Martinez's termination, both Dr. Bonati and Spinelli were also members of the protected class (Doc. 54, Ex. 2, February 27, 2018 Declaration of Rhonda Spinelli ("February 2018 Spinelli Decl."), at ¶3; Bonati Dep., at 17).[5] Since two of the primary individuals involved in the determination to terminate Martinez belonged to the same protected class as Martinez at the time of her termination, Martinez faces a difficult burden in establishing pretext. *See Moore v. Ala. Dep't of Corrs.*, 137 F. App'x 235, 239 n.4 (11th Cir. 2005) (stating that plaintiffs face a greater burden where the decisionmakers also qualify as members of the protected class); *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (finding that the plaintiff faced a "difficult burden" because all of the primary players behind his termination were well over age forty and thus within the class of persons protected by the ADEA). Given the foregoing, Martinez failed to meet that burden and can therefore not establish pretext.

### iii.    Cat's Paw Theory

Finally, Martinez contends that Dr. Bonati acted as a conduit or "cat's paw" giving effect to Spinelli's age-based discriminatory animus toward Martinez. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (citation omitted) (indicating that the cat's paw theory involves a recommender using the decisionmaker as a mere conduit, or "cat's paw," to give effect to the recommender's discriminatory animus). Under a cat's paw theory, the plaintiff seeks to hold an employer liable for the animus of a supervisor or subordinate not charged with making the ultimate employment decision. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1334-35 n.6 (11th Cir. 2013) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011)). To

---

[5]  Spinelli also attested to the fact that, at the time of Martinez's termination, more than 31% of The Bonati Institute employees were over the age of 60; more than 61% of employees were over the age of 50; and 18 out of 93 employees were older than Martinez (January 2018 Spinelli Decl., at ¶6; Spinelli Dep., at 56-57; March 2016 Spinelli Decl., at ¶4).

hold an employer liable through the discriminatory conduct of a subordinate, an ADEA plaintiff "must show the subordinate's animus was a 'but-for' cause of the adverse employment action, i.e. it was the factor that made a difference." *Simmons v. Sykes Enterprs., Inc.*, 647 F.3d 943, 949-50 (11th Cir. 2011) (citation omitted). A plaintiff may establish but-for causation under the cat's paw doctrine by showing that the unbiased decisionmaker followed a biased recommendation without conducting an independent investigation regarding the complaint or allegations of misconduct against the plaintiff. *Stimpson*, 186 F.3d at 1332; *see also Crawford v. Carroll*, 529 F.3d 961, 979 n.21 (11th Cir. 2008) ("Under a 'cat's paw' theory, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct").

Even viewing the facts in the light most favorable to Martinez, her attempt to rely on a cat's paw theory of liability in this instance fails. Most notably, as discussed above, Spinelli's comments about a lack of enthusiasm and a failure to train on the new MRI did not demonstrate any discriminatory animus and therefore no such discriminatory animus could be imputed to Dr. Bonati. Furthermore, Dr. Bonati did not solely rely on the statements from Spinelli. Dr. Bonati, as the ultimate decisionmaker, relied upon the statements from Spinelli *and* from Eguino in reaching the decision to terminate Martinez (Bonati Dep., at 7-12, 14-15, 18-19; Eguino Dep., at 20-24; Spinelli Dep., at 28-30, 69-70). Dr. Bonati spoke with Eguino regarding Martinez's failure to train on the new MRI and then spoke with Spinelli, who indicated that Martinez demonstrated issues with timeliness, attendance, and shirking her work responsibilities and not meeting expectations (Bonati Dep., at 10-15). Even assuming that Spinelli expressed discriminatory animus, Dr. Bonati's discussion with Eguino regarding Martinez's failure to train on the new MRI supported his decision to terminate Martinez and

thus precludes a finding that Dr. Bonati acted as a mere conduit for any discriminatory animus harbored by Spinelli.

Further, as The Bonati Institute contends, in carrying out its business and in making business decisions, including personnel decisions, an employer is entitled to rely on its good-faith belief regarding reports of an employee's misconduct, and, any mistaken belief cannot establish pretext. *See E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176-77 (11th Cir. 2000) (citations omitted); *Elrod*, 939 F.2d at 1470 (noting that the inquiry is whether an employer believed, in good faith, that the employee's performance was unsatisfactory or that the employee engaged in misconduct, not whether either actually occurred). "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266 (citation omitted). The question therefore is not whether Martinez refused to follow instructions given by Eguino, refused to follow her regularly scheduled hours, refused to clock out for lunch, refused to train on the new MRI, was rude and threatening to other employees, or slept on the job. Rather, the question is whether The Bonati Institute was dissatisfied with her for those or other nondiscriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about Martinez as cover for discrimination against her based on her age. *See id.*

In this instance, nothing in the record indicates that the complaints about Martinez's attendance, timeliness, or job performance were used as a cover for age discrimination. Instead, based on discussions with Spinelli, the HR supervisor, and Eguino, Dr. Bonati properly relied on his good-faith belief regarding Martinez's failure to meet the expectations of her position, and Martinez's age was simply not a determinative cause of Dr. Bonati's decision to terminate Martinez. *See id.*; *see Simmons*, 647 F.3d at 950 ("But where a violation of company policy was reported through channels independent from the biased supervisor, or the undisputed

evidence in the record supports the employer's assertion that it fired the employee for its own unbiased reasons that were sufficient in themselves to justify termination, the plaintiff's age may very well have been in play—and could even bear some direct relationship to the termination if, for instance, the biased supervisor participated in the investigation or recommended termination—but age was not a determinative cause of the employer's final decision."). Given the foregoing, therefore, Martinez's arguments regarding Dr. Bonati acting as a "cat's paw" for Spinelli's discriminatory animus fail.

**IV.    Conclusion**

After consideration, and for the foregoing reasons, it is hereby

ORDERED:

1.  The Bonati Institute's Renewed Motion for Summary Judgment (Doc. 49) is GRANTED.

2.  The Clerk is directed to enter final judgment in favor of The Bonati Institute and against Martinez.

3.  The Clerk is further directed to terminate all deadlines and close the case.

DONE AND ORDERED in Tampa, Florida, on this 6th day of August, 2019.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:    Counsel of Record